**SULAIMAN LAW GROUP, LTD.**
Bobby C. Walker, Esq. (State Bar No. 321788)
2500 South Highland Avenue, Suite 200
Lombard, IL 60148
Telephone: (630) 575-8181 Ext. 149
Facsimile: (630) 575-8188
Email: bwalker@sulaimanlaw.com
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH D. HUTCHINS, | Case No. |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | **1. VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT, 15 U.S.C. §1679 ET SEQ.;** |
| OAKSTONE LAW GROUP, PC, | **2. VIOLATION OF THE CALIFORNIA CREDIT SERVICES ORGANIZATIONS ACT OF 1984, CAL. CIV. CODE §1789.10 ET SEQ.;** |
| Defendant. | **3. VIOLATIONS OF THE CALIFORNIA FAIR DEBT SETTLEMENT PROCEDURE ACT, CAL. CIV. CODE § 1788.300 *et seq.*;** |
| | **DEMAND FOR JURY TRIAL** |

## COMPLAINT

NOW comes KENNETH D. HUTCHINS ("Plaintiff"), by and through the undersigned, complaining as to the conduct of OAKSTONE LAW GROUP, PC ("Defendant") as follows:

### NATURE OF THE ACTION

1

1. Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.*, the California Credit Services Organizations Act of 1984 ("CCSOA") pursuant to Cal. Civ. Code §1789.10 *et seq.,* and the California Fair Debt Settlement Practices Act ("CFDSPA") under Cal. Civ. Code § 1788.300 *et seq.,* for Defendant's unlawful conduct.

## JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the CROA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business within the Eastern District of California and a substantial portion of the events or omissions giving rise to the claims occurred within the Eastern District of California.

## PARTIES

4. Plaintiff is a natural "person," as defined by 47 U.S.C. § 153(39), over 18 years of age, residing in Sacramentoa, California, which lies within the Eastern District of California.

5. Defendant is a credit repair organization, debt settlement provider, and purported law firm that offers consumers the ability to eliminate and resolve debt

through their offered services. Defendant represents that it will "legally dispute your debt" and that "as seasoned attorneys, we apply our years of legal expertise and industry experience to effectively dispute your debt. Whether it's through the complete discharge of your debt or favorable negotiation in court, we have a proven track record of achieving superior results compared to traditional debt settlement companies. **We not only aim to relieve your financial stress but also work to improve your credit score.**"[1] Upon information and belief, Defendant has a relationship with The Litigation Practice Group, PC ("LPG") such that, as LPG deals with allegations of fraud and potential dissolution, certain customers of LPG are being transferred to Defendant to continue the "services" purportedly being offered. Defendant is a professional corporation organized under the laws of the state of California with its principal place of business located at 888 Prospect Street, Suite 200, La Jolla, California 92037.

6. Defendant is a "person" as defined by 47 U.S.C. §153(39).

7. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

**FACTS SUPPORTING CAUSES OF ACTION**

---

[1] https://www.oakstonepc.com/

8.   In approximately September of 2020, Plaintiff was seeking to improve his credit and to take care of some obligations that were causing him financial difficulty, including some unforeseen medical and legal expenses.

9.   Plaintiff then came across LPG.

10. LPG represented to Plaintiff that, in exchange for Plaintiff making monthly payments of approximately $725 over the course of 18-24 months, LPG would get all of Plaintiff's debts invalidated so that they would no longer be impacting his credit, would get the debts removed from Plaintiff's credit, and would get all of Plaintiff's obligations in a position where Plaintiff would not have to pay them back.

11. Finding desirable the nature of the representations and wanting the results promised by LPG, Plaintiff agreed to use LPG's services and entered into a contract for the provision of the same.

12. Plaintiff set up automatic payments through LPG, which withdrew $725.38 each month.

13. Plaintiff made his payments to LPG faithfully over the following 28 months.

14. However, despite paying over $20,000.00 to LPG, Plaintiff did not receive any of the benefits he was promised.

15. None of Plaintiff's enrolled obligations were disputed, none of the obligations were invalidated, and Plaintiff was still being sought after for the debts enrolled in LPG's program.

4

16. In approximately January of 2023, Plaintiff contacted LPG about why nothing had been done despite his maintenance of payments for the preceding 28 months and wanted to cancel his agreement.

17. LPG, through its representative "Brenda Denardo," acknowledged it had failed to provide any results or deliver the represented services to Plaintiff, and told Plaintiff that they would refund everything paid and do so within 14 days.

18. Plaintiff's refund was due on or about January 18, 2023.

19. Plaintiff did not receive his refund on January 18, 2023.

20. On or about January 26, 2023, Plaintiff followed up with LPG, and was told it would take another 12-14 days for the refund to be provided.

21. That refund was never provided.

22. Instead, On February 1, 2023, Plaintiff was informed that his account was being transferred to Defendant.

23. Plaintiff had never heard of Defendant, did not want any services from Defendant, and had already cancelled the services over which Defendant was taking over.

24. Upon information and belief, Defendant knew that Plaintiff had requested to cancel his services when it took over the account.

25. Nevertheless, Defendant charged Plaintiff another $725.38 despite having no authorization to do so and despite not performing any services for Plaintiff justifying the amount charged.

26. Plaintiff then spoke with Defendant, who acknowledged Plaintiff's request for cancellation with LPG and that they had taken the $725.38 out of his account.

27. Plaintiff reiterated his desire to cancel and receive a refund, and Defendant then cancelled the agreement with Plaintiff, without returning any money that had been fraudulently taken from Plaintiff.

28. Defendant is involved in a course of business and scheme resulting in a fraud being perpetrated on Plaintiff and other consumers, as it is perpetuating the fraud undertaken by LPG by continuing to bilk consumers for payments in connection with credit repair and debt settlement services that are entirely fraudulent, were never provided, and which were blatantly misrepresented to consumers including Plaintiff.

29. Upon information and belief, Defendant was aware of LPG's conduct, the issues it was facing, yet nevertheless agreed to take over accounts knowing that it would continue charging consumers for services that would ultimately never be performed in the manner such services were represented.

30. Frustrated and distressed over Defendant's conduct, Plaintiff spoke with the undersigned regarding his rights.

31. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary harm, denial of the benefit of his bargain, making payments for deficient and nonexistent credit repair services, relying upon Defendant's representations to

his detriment, significant pecuniary loss, as well as a violation of his state and federally protected interests.

**COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT**

32. Plaintiff repeats and realleges paragraphs 1 through 31 as though fully set forth herein.

33. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

34. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

35. Defendant is a credit repair organization as it explicitly represents to consumers that a purpose of its services is to improve its clients' credit scores.

36. Defendant is similarly a "person" as contemplated by the CROA.

**a. Violations of CROA § 1679b(a)**

37. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or

7

course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

38. Defendant violated the above provisions of the CROA through its relationship with LPG and efforts to perpetuate the fraud committed by LPG. Defendant directly and indirectly engaged in an act, practice, and course of business that constitutes and results in the commission of, or attempt to commit, a fraud or deception on Plaintiff and consumers in general by agreeing to take over clients from LPG. LPG charged Plaintiff tens of thousands of dollars to do nothing, and Defendant attempted to continue doing so with Plaintiff despite knowing Plaintiff did not want further services and in an effort to continue receiving payment for fraudulent and misrepresented services. Defendant's course of conduct is designed to continue profiting from consumers who have agreed to make automatic payments without any regard for whether those services should continue to be provided or whether LPG adhered to any of the contractual requirements in connection with the consumers over whose services Defendant was taking over. Simply put, Defendant's stepping into the shoes of LPG given the fraud perpetrated by LPG against Plaintiff illustrates its attempt to commit a fraud in connection with the services offered to Plaintiff by LPG.

39. Defendant further violated the above provisions of the CROA through its own fraudulent conduct directed towards Plaintiff. Defendant charged Plaintiff for

services it never performed, and did so despite knowing there to be no further authorization for the charges assessed by Defendant. Defendant simply took Plaintiff's money, cancelled the agreement, and never returned the funds.

### b. Violations of CROA § 1679b(b)

40. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

41. Defendant violated § 1679b(b) through its charging and receiving of money for services it agreed to perform for Plaintiff before such services were fully performed. Defendant charged Plaintiff up-front fees and monthly fees unrelated to any services Defendant actually performed, instead just taking the money that was set up through Plaintiff's automatic payments.

### c. Violation of CROA § 1679c

42. The CROA provides that a credit repair organization must provide consumers with certain written disclosures before providing services.

43. Defendant violated 15 U.S.C. § 1679c through its failure to provide the written disclosures required under § 1679c. Defendant never provided such disclosures, nor did it provide a separate document containing such disclosures.

### d. Violation of CROA §§ 1679d & 1679e

44. The CROA, pursuant to 15 U.S.C. § 1679d, requires there to be a signed written agreement in place between credit repair organizations and consumers, and § 1679e outlines the requirement that a separate notice of cancellation form must be provided.

45. Defendant violated the above provisions of the CROA by charging Plaintiff absent any written contract exchanged between the parties and failing to provide any of the information to Plaintiff required by the CROA.

WHEREFORE, Plaintiff, KENNETH D. HUTCHINS, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a.  Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b.  Awarding Plaintiff actual damages, as provided under 15 U.S.C. § 1679g(a)(1), in an amount no less than all sums Plaintiff paid to LPG and Defendant;

c.  Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d.  Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

e.  Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE CALIFORNIA CREDIT SERVICES ORGANIZATION ACT OF 1984

46. Plaintiff restates and realleges paragraphs 1 through 45 as though fully set forth herein.

47. Plaintiff is a "buyer" as defined by Cal. Civ. Code § 1789.12(c).

48. Defendant is a "credit services organization" as defined by Cal. Civ. Code § 1789.12(a).

### a. Violation of CCSOA § 1789.13

49. The CCSOA, pursuant to Cal. Civ. Code § 1789.13, provides a list of prohibited conduct for credit services organizations.

50. Pursuant to § 1789.13(a), a credit services organization cannot "charge or receive any money or other valuable consideration prior to full and complete performance of the services the credit services organization has agreed to perform for or on behalf of the buyer."

51. Defendant violated § 1789.13(a) when it charged and received money from Plaintiff without fully completing the services, let alone providing any services.

52. Pursuant to § 1789.13(h), credit services organization cannot "[m]ake or use untrue or misleading representations in the offer or sale of the services of a credit services organization." Similarly, pursuant to § 1789.13(i), a credit services organization cannot "[e]ngage, directly or indirectly, in an act, practice, or course of business that operates or would operate as a fraud or deception upon a person in connection with the offer or sale of the services of a credit service organization."

53. Defendant violated §§ 1789.13(g)&(h) in much the same way it violated § 1679b(a)(3)-(4) of the CROA.

### b. Violations of CCSOA §§ 1789.14-1789.15

54. The CCSOA, pursuant to Cal. Civ. Code § 1789.15, provides the extent of information that must be provided to a buyer by a credit services organization under § 1789.14.

55. Defendant violated these provisions of the CCSOA by failing to provide Plaintiff such disclosures and similarly failing to provide Plaintiff a copy of the disclosures.

WHEREFORE, Plaintiff, KENNETH D. HUTCHINS, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to Cal. Civ. Code § 1789.21(a);

c. Awarding Plaintiff punitive damages pursuant to Cal. Civ. Code § 1789.21(a);

d. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Cal. Civ. Code § 1789.21(a); and

e. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT III – VIOLATIONS OF THE CALIFORNIA FAIR DEBT SETTLEMENT PRACTICES ACT

56. Plaintiff restates and realleges paragraphs 1 through 55 as though fully set forth herein.

57. Plaintiff is a "consumer" as defined by Cal. Civ. Code § 1788.301(d).

58. Defendant is a "debt settlement provider" as defined by Cal. Civ. Code § 1788.301(a).

59. Defendant does not satisfy the test necessary to be exempted from the CFDSPA for attorneys and law firms, as it charges consumers, and charged Plaintiff, for the debt resolution services it was providing. *See* Cal. Civ. Code § 1788.304(c).

### a. Violation of CFDSPA § 1788.302

#### i. Violations of § 1788.302(a)

60. The CFDSPA, pursuant to Cal. Civ. Code § 1788.302(a), provides that "[a] debt settlement provider shall not engage in false, deceptive, or misleading acts or practices when providing debt settlement services." Further, "without limiting the general applicability of the foregoing," conduct violates § 1788.302(a) if it includes "[o]mitting any material information." Cal Civ. Code § 1788.302(a)(3).

61. Defendant violated § 1788.302(a) of the CFDSPA in much the same way it violated the CROA and CCSOA's prohibitions on deceptive and misleading conduct.

#### ii. Violations of § 1788.302(c)

62. The CFDSPA, pursuant to Cal. Civ. Code § 1788.302(c), provides that "[a] debt settlement provider . . . shall not engage in unfair, abusive, or deceptive acts or practices when providing debt settlement services . . . ." Without limiting the general applicability of this prohibition, it is considered unfair, abusive, and deceptive for a debt settlement provider to "request[] or receive[] payment of any fee or consideration for debt settlement services, unless and until": (1) some sort of

settlement or alteration of an enrolled debt has occurred; (2) a consumer has made at least one payment pursuant to the negotiated debt; and the fee must be proportional or otherwise represent a percentage of the amount saved. agreement between the consumer and the creditor. Cal. Civ. Code § 1788.302(c)(2).

63. Defendant violated § 1788.302(c) through its unfair and deceptive conduct directed towards Plaintiff. As alluded to *supra.,* Defendant engaged in a series of deceptive and unfair conduct in connection with the services it provided Plaintiff and charged Plaintiff for services it never actually performed.

WHEREFORE, Plaintiff KENNETH D. HUTCINS, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to Cal. Civ. Code § 1788.305(b)(1)(B);

c. Awarding Plaintiff statutory damages, pursuant to Cal. Civ. Code § 1788.305(b)(1)(A), of $5,000.00 per violation of this title;

d. Awarding Plaintiff punitive damages pursuant to Cal. Civ. Code § 1788.305(b)(3);

e. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Cal. Civ. Code § 1789.21(a); and,

f. Awarding any other relief as this Honorable Court deems just and appropriate.


Dated: April 28, 2023                    Respectfully submitted,

14

/s/Bobby C. Walker
Bobby C. Walker, Esq.
California Bar No. 321788
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd
2500 S Highland Ave, Suite 200
Lombard, IL 60148
Telephone: (630) 575-8181 Ext. 149
bwalker@sulaimanlaw.com