UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH D. HUTCHINS,<br><br>Plaintiff,<br><br>v.<br><br>OAKSTONE LAW GROUP, PC,<br><br>Defendant. | Case No. 2:23-cv-00802-WBS-JDP<br><br>**ORDER**<br><br>DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT WITHOUT PREJUDICE<br><br>ECF No. 13 |

Plaintiff filed a complaint alleging that defendant, a California law corporation, participated in a sham credit repair scheme in violation of the Credit Repair Organizations Act ("CROA"), *see* 15 U.S.C. § 1679b; the California Credit Services Act, *see* Cal. Civ. Code § 1789.13; and the California Fair Debt Settlement Practices Act, *see* Cal. Civ. Code §§ 1788.302(a), (c). ECF No. 1. Defendant did not file a response to the complaint, and the Clerk of Court has entered default. ECF No. 7. Plaintiff now moves for entry of default judgment under Federal Rule of Civil Procedure 55(b). ECF No. 13. As explained below, because plaintiff has not demonstrated that defendant is liable for the requested damages under the CROA, I will deny the motion without prejudice.[1]

---

[1] Pursuant to Local Rule 230(g), the hearing calendared for August 31, 2023, was vacated and the motion was ordered submitted without oral argument. *See* ECF No. 16.

**Background**

Plaintiff alleges the following facts in the complaint:

In September 2020, while seeking to improve his credit score and reduce debt, plaintiff "came across" the Litigation Practice Group, PC ("LPG"). ECF No. 1 ¶¶ 8, 9. LPG represented that, for a monthly fee of approximately $725, it would "invalidate" plaintiff's debts and have them removed from his credit report "so that they would no longer . . . impact[] his credit [score]." *Id.* ¶ 10. Based on these representations, plaintiff entered into a contract with LPG, and set up automatic payments to allow LPG to withdraw $725.38 per month. *Id.* ¶¶ 11, 12. Over the following twenty-eight months, plaintiff's payments to LPG totaled over $20,000. *Id.* ¶¶ 13, 14. In January 2023, plaintiff contacted LPG to cancel his contract because he had "not receive[d] any of the benefits he was promised"; none of his financial obligations had been disputed or invalidated, and he was "still being sought after for [his] debts." *Id.* ¶¶ 14-16. Although plaintiff was told by a representative of LPG that he would be refunded for "everything paid," LPG never provided a refund. *Id.* ¶¶17-21. Instead, on February 1, 2023, plaintiff was informed that his account was transferred from LPG to defendant, a law firm that offers debt dispute services. *Id.* ¶¶ 5, 22. Plaintiff, along with other LPG customers, was transferred to defendant to "continue the 'services' purportedly being offered" while LPG was "deal[ing] with allegations of fraud and potential dissolution." *Id.* ¶ 5.

Following the transfer, defendant withdrew $725.38 from his account, "despite having no authorization to do so and despite not performing any services . . . justifying the amount charged." ECF No. 1 ¶¶ 24-25. After plaintiff contacted defendant and "reiterated his desire to cancel and receive a refund," defendant canceled the agreement "without returning any money that had been fraudulently taken." *Id.* ¶¶ 26-27.

**Legal Standard**

Rule 55(a) of the Federal Rules of Civil Procedure instructs the court clerk to enter default when a defendant "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). Under Rule 55(b), a plaintiff may apply to the district court for a default judgment. *See* Fed. R. Civ. P. 55(b)(2). An initial entry of default by the court clerk,

however, does not automatically entitle a plaintiff to a court-ordered judgment.  "[T]he general rule [is] that default judgments are ordinarily disfavored."  *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986) (citation omitted).  "Whenever it is reasonably possible, cases should be decided upon their merits."  *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985) (citation omitted).

The decision to grant or deny a default judgment is within the court's discretion.  *See Eitel*, 782 F.2d at 1471.  When exercising this discretion, the court may consider the following factors: (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the pleading, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether the default was due to excusable neglect, and (7) the strong public policy favoring decisions on the merits.  *See id.* at 1471-72.  In this context, all well-pleaded allegations of the complaint are taken as true, except for those concerning the amount of damages.  *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citation omitted).

Entry of a default judgment for money is appropriate without a hearing if "the amount claimed is a liquidated sum or capable of mathematical calculation."  *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981); *see also Bostik, Inc. v. J.E. Higgins Lumber Co.*, 2013 WL 312074, at *4 (N.D. Cal. Jan. 10, 2013) (requiring the plaintiff seeking default judgment to "'prove up' the amount of damages, fees, and costs it requests by providing admissible evidence in the form of clear declarations, calculations, witness testimony, or other documentation supporting its request").  The damages award, however, cannot "differ in kind from, or exceed in amount, what is demanded in the pleadings."  *See* Fed. R. Civ. P. 54(c)).

**Discussion**

Before determining whether the *Eitel* factors support entry of default judgment, the court must confirm that jurisdiction exists over the subject matter and the parties.  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  Because the complaint's first cause of action asserts violations of the Credit Repair Organizations Act, a federal consumer protection statute designed to prevent fraud and abuses in the credit repair industry, *see* 15 U.S.C. § 1679b, the court has subject matter

1  jurisdiction over this action.  *See* 15 U.S.C. § 1679b; 28 U.S.C. § 1331 ("The district courts shall
2  have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the
3  United States.").  The court also has personal jurisdiction over the parties: plaintiff resides in
4  Sacramento, California, and defendant is a California corporation.  *See Daimler AG v. Bauman*,
5  571 U.S. 117, 137 (2014) ("For an individual, the paradigm forum for the exercise of general
6  jurisdiction is the individual's domicile; for a corporation, . . . the place of incorporation and
7  principal place of business are 'paradig[m] . . . bases for general jurisdiction.'") (quotations and
8  citations omitted); ECF No. 1 ¶¶ 4-5; California Secretary of State website,
9  https://bizfileonline.sos.ca.gov/search/business (last visited January 22, 2023).[2]

10  Additionally, the record reflects that defendant was properly served with the complaint.
11  *See S.E.C. v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007) ("[S]ervice of process is the means by
12  which a court asserts its jurisdiction over the person.").  A corporation may be served in
13  accordance with state law where the district court is located.  Fed. R. Civ. P. 4(e)(1), 4(h)(1)(A).
14  California law provides that a summons and complaint may be served by delivering a copy to a
15  corporation's designated agent for service of process.  Cal. Code Civ. Proc. § 416.10(a).  Here,
16  the relevant proof of service states that, on May 17, 2023, a professional process server served a
17  copy of the complaint and summons on Sarai Marin, a registered agent of defendant.  *See* ECF
18  No. 5; California Secretary of State website, https://bizfileonline.sos.ca.gov/search/business (last
19  visited January 22, 2023).

20  Turning to the *Eitel* analysis, the court first considers the merits of plaintiff's claims and
21  the sufficiency of the complaint.  These factors are often treated as the most important and can be
22  analyzed together, as they ask whether the allegations in the complaint "are sufficient to state a
23  claim on which the [plaintiff] may recover."  *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th
24  Cir. 1978); *Fed. Nat. Mortg. Ass'n v. George*, 2015 WL 4127958, at *3 (C.D. Cal. July 7, 2015);
25  *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010).

---

[2] The court takes judicial notice of defendant's entity profile from the California Secretary of State's website.  Fed. R. Evid. 201; *see Gerritsen v. Warner Bros. Entm't, Inc.*, 112 F. Supp. 3d 1011, 1033-34 (C.D. Cal. 2015).

1    In the first cause of action, plaintiff claims that defendant is liable under the provisions of
2 the CROA that prohibit "any person" from "mak[ing] or us[ing] any untrue or misleading
3 representation of the services of the credit repair organization," *see* 15 U.S.C. § 1679b(a)(3), and
4 from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes
5 or results in the commission of, or an attempt to commit, a fraud or deception on any person in
6 connection with the offer or sale of the services of the credit repair organization," *see* 15 U.S.C.
7 § 1679b(a)(4). Plaintiff further alleges that defendant violated 15 U.S.C. § 1679b(b), which
8 prohibits a "credit repair organization" from "charg[ing] or receiv[ing]any money or other
9 valuable consideration for the performance of any service which the credit repair organization has
10 agreed to perform for any consumer before such service is fully performed." Plaintiff also states
11 violations of 15 U.S.C. §§ 1679c, 1679d and 16979e, which require a credit repair organization to
12 provide a written contract for services, a notice of cancellation, and a disclosure statement. *See*
13 ECF No. 1 ¶¶ 37-45.

14   Plaintiff asserts that defendant, by "perpetuating" LPG's fraudulent practices, is liable not
15 only for its own misconduct, but also for LPG's unlawful acts. *See* ECF No. 1 ¶¶ 28, 45(b); ECF
16 No. 13 at 7-8. In the motion for default judgment, he requests actual damages under the CROA in
17 the amount of $20,308.96, which he asserts is the total sum that he paid to LPG.[3] *See* ECF No. 13
18 at 8, 10.

19   Plaintiff's complaint and motion do not demonstrate that defendant is liable for the
20 payments made to LPG. In particular, he does not identify a specific theory of joint liability to
21 support his damages request, and even if he had, the factual allegations in the complaint lack
22 sufficient detail to allow the court to draw a reasonable inference that defendant is legally
23 responsible for LPG's unlawful acts. *See, e.g.*, ECF No. 1 ¶¶ 5, 38 (broadly alleging that
24 defendant "has a relationship with" LPG and that defendant "stepp[ed] into the shoes of LPG" to
25 "perpetuate the fraud"). Critically, there are no facts describing the nature of the relationship

---

[3] Plaintiff's damages calculation is based on twenty-eight monthly payments of $725.32, and not $725.38 as alleged in the complaint. *See* ECF No. 13 at 10. Plaintiff also seeks $5,000 in statutory damages under Cal. Civ. Code § 1788.305(b)(1)(A), and reasonable attorneys' fees and costs. *See* ECF No. 13 at 8-10.

5

between defendant and LPG that indicate, for example, that they operated under joint control, or that they otherwise did not function as separate entities. And while the complaint states that plaintiff's account was transferred from LPG to defendant in early 2023, this is not sufficient to show that defendant was engaged in a scheme or course of business to fraudulently induce customers to purchase LPG's bogus credit repair services. *Cf. Zimmerman v. Cambridge Credit Counseling Corp.*, 529 F. Supp. 2d 254, 280 (D. Mass. 2008) (predicating liability of individual and corporate defendants on CROA's "course of business" provision and "alter ego" doctrine, where corporate defendants "engaged in a single overarching scheme to attract customers [with misleading representations], charge them up-front fees and otherwise behave in contravention of CROA, and funnel the resulting profits to the [individual defendants who controlled the corporations] through their entwined finances"), aff'd sub nom. *Zimmerman v. Puccio*, 613 F.3d 60 (1st Cir. 2010).[4] Indeed, the only factual allegations in the complaint about defendant's misconduct are that defendant, following the transfer of plaintiff's account, charged him without performing any credit repair services, and refused to provide a refund.[5]

Because plaintiff has not sufficiently pled facts or provided authority to demonstrate that defendant is liable for the payments made to LPG, entry of default judgment is not appropriate. *See, e.g.*, *Williams v. Phoenix Law PC*, Case No. 3:23-cv-05437-TMC (W.D. Wash. Nov. 3, 2023) (denying motion for default judgment on similar facts because plaintiff did not establish a

---

[4] Plaintiff asserts, without identifying supporting authority, that because defendant is a "person" who violated the CROA, defendant is liable for the payments made to LPG, pursuant to CROA's damages provision that states "*[a]ny person* who fails to comply with any provision of this subchapter with respect to any other person shall be liable to such person in an amount equal to the sum of . . . *any amount paid by the person to the credit repair organization*." *See* 15 U.S.C. § 1679g(a)(1) (emphasis added); ECF No. 13 at 8. The court is not persuaded, however, that section 1679g(a)(1) subjects defendant to liability for the payments to LPG absent factual allegations that indicate that defendant was operating in conjunction with LPG to solicit customers to sign fraudulent contracts for credit repair services.

[5] The court notes that the complaint contains inconsistent allegations as to the type and frequency of the fees that defendant charged. In the factual summary of the complaint, plaintiff alleges that defendant made one unauthorized withdrawal of $725.38 from his account. *See* ECF No. 1 ¶¶ 25-27. Under the CROA cause of action, however, plaintiff alleges that defendant unlawfully charged him unspecified "up-front fees and monthly fees . . . instead of just taking the money that was set up through Plaintiff's automatic payments." *See id*. ¶ 41.

legal entitlement to the damages sought against defendant).

In reaching this determination, the court notes that plaintiff's request for damages is also deficient because he did not provide a declaration or other evidence to substantiate the amount. Although he attached a copy of his payment history to LPG as an exhibit to the motion, this record only captures the payments that he made from September 2020 through January 2022. *See* ECF No. 13-1.  In any event, counsel's declaration does not authenticate this exhibit, and plaintiff did not submit a personal declaration attesting to any facts concerning his payments or the accuracy of the exhibit.  *See* ECF No. 13-3.

**Conclusion**

Based on the above, it is hereby ORDERED that plaintiff's motion for default judgment, ECF No. 13, is denied without prejudice.

IT IS SO ORDERED.

Dated:   February 8, 2024

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE